UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  :

DANIEL PANZER, *on behalf of himself*          :
*and all others similarly situated*,                      :          15cv5383
                                                                          :
                    Plaintiff,                                    :          OPINION & ORDER
                                                                          :
          -against-                                               :
                                                                          :
ALTERNATIVE CLAIMS                               :
MANAGEMENT, LLC,                                  :
                                                                          :
                    Defendant.                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  :

WILLIAM H. PAULEY III, District Judge:

          Plaintiff Daniel Panzer, on behalf of himself and a putative class of similarly

situated individuals, brings claims against Alternative Claims Management, LLC ("ACM") for

violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA").

ACM moves to dismiss Panzer's Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  ACM's motion is granted in part and denied in part.

BACKGROUND

          The Amended Complaint's allegations are presumed to be true for purposes of

this motion.  On February 11, 2015, Panzer rented a car from Sixt Rent a Car, LLC ("Sixt") in

Los Angeles.[1]  He drove the car once, for about 15 to 20 minutes, to his hotel.  The next morning

Panzer discovered that the car was leaking gasoline and informed Sixt.  Sixt had the car towed

that day.

_____

          [1] Plaintiff's claims against Sixt have been voluntarily dismissed.  (ECF No. 19.)

That month, Panzer's credit card was charged for a one-day rental and a $48.00 refueling fee.  Panzer disputed those charges and had them removed from his statement. Thereafter, on June 19, 2015, ACM emailed Panzer:

> Daniel Panzer,
>
> My name is Clare Zapata and I am writing on behalf of SIXT Car Rental.   This is an attempt to collect a debt on the damages to the rental vehicle that occurred on or about 02/16/2015.   Any information obtained may be used for that purpose.
>
> If you can email me back with your insurance information I will be more than happy to take care of everything from there. Or you can contact out offices at (210)340.4400.  We may be reached M-F between the hours of 8am-5-30pm CST.
>
> When calling, please reference out ACM file# 142457.
>
> Anyone one the Team 1 will be able to assist you.
>
> Thank you,

(Am. Compl. Ex. C.)  The end of the email included this disclaimer:

> Pursuant to 15 USC Section 1692g, be advised that Alternative Claims Management is attempting to collect a debt and any information obtained will be used for that purpose. Within thirty (30) days after receipt of this notice you must dispute the validity of this debt, or any portion thereof, or this debt will be assumed to be valid.  Upon your written request within thirty (30) days after receipt of this notice, we will furnish you with the name and address of the original creditor, if different from the "Creditor/ACM Client" listed above.  If you notify us, in writing, within thirty (30) days after receipt of this notice that the above debt, or any portion thereof, is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you.

Panzer promptly responded to the email and disputed the validity of the debt.

On June 23, 2015, ACM sent Panzer a letter acknowledging his dispute, but positing that Panzer owed $3,196.60 to Sixt under the rental car agreement because "[t]he vehicle did not leave [Sixt] in this [damaged] condition [and] [it] is the responsibility of the renter to return the vehicle in the same condition as the time of rental."  (Am. Compl. Ex. D.) That letter included bolded langage stating that it was being sent "IN AN ATTEMPT TO COLLECT A DEBT AND INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."   That letter also attached the Sixt rental car agreement, which stated that "[f]ailure to return rented property or equipment upon expiration of the rental period and failure to pay amounts due (including costs for damage to the property or equipment) are evidence of

abandonment or refusal to redeliver the property, punishable in accordance with section 812.155, Florida statutes."   Panzer received no further communications from ACM.  On July 10, 2015 Panzer initiated this action.[2]

## LEGAL STANDARD

On a motion to dismiss, the factual allegations in a complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor.  Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009) (citation omitted); Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).  However, a claim must rest on "factual allegations sufficient to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to state a claim.  Iqbal, 556 U.S. at 678 (citation omitted).

## DISCUSSION

ACM moves to dismiss on the following grounds: (1) that it is not a "debt collector" under the FDCPA, and (2) even if the FDCPA applied to ACM in this action, Panzer has failed to identify any FDCPA violations.

I.   ACM's Status as a "Debt Collector" in this Action

Defendant argues that the FDCPA is inapplicable here because ACM is not a

---

[2] ACM submits a declaration from Ruby Quijano (ECF No. 23), ACM's general manager, explaining that ACM is a third-party administrator charged with making first contact regarding monies owed, not collecting defaulted debts.  The timeline set forth by Quijano's affidavit explains that the vehicle's fuel tank was repaired in March 2015 (after Plaintiff had been charged on his credit card), thereby demonstrating ACM's June 2015 email was the first attempt to collect monies owed for car repairs, ostensibly strengthening the argument discussed infra that the debt was not "in default" when it was obtained by ACM in June 2015.  Quijano's affidavit also states that Panzer requested an email from ACM after being initially contacted by telephone in June.  Panzer stipulates to the assertion that ACM was asked to contact Panzer but otherwise disputes the affidavit.  ACM offers no reason why Quijano's affidavit should be considered by this Court on a motion to dismiss.

"debt collector" under the statute.  Under the FDCPA, a "debt collector" is

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  Exempted from that definition is "any person collecting or attempting to collect any debt owed or due . . . another to the extent such activity . . . concerns a debt which was <u>not in default at the time it was obtained</u> by such person." 15 U.S.C. § 1692a(6)(F) (emphasis added); <u>see also</u> <u>Muniz v. Bank of Am., N.A.</u>, No. 11-cv-8296 (PAE), 2012 WL 2878120, at *3 (S.D.N.Y. July 13, 2012) ("[C]ompanies or persons that service debts acquired before a customer default are not 'debt collectors.'")  ACM's argument relies on this exemption.

Congress did not define the term "default" in the FDCPA, leaving courts to develop an applicable definition and analytical framework.  At a general level, the Second Circuit has proclaimed that, "[b]ecause the FDCPA is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." <u>Vincent v. The Money Store</u>, 736 F.3d 88, 98 (2d Cir. 2013) (quotation and citation omitted).[3] Analyzing the term "default," courts "distinguish[] between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default."  <u>Alibrandi v. Fin. Outsourcing Servs., Inc.</u>, 333 F.3d 82, 86 (2d Cir. 2003). Thus, the Second Circuit has rejected the "argument that default occurs immediately after payment becomes due" and found "that the interests of debtors, creditors, collectors, and debt service providers will best be served by affording creditors and debtors considerable contractual

---

[3] Of course, this command does not permit courts to read beyond the plain text of the statute.  <u>See, e.g.</u>, <u>CTS Corp. v. Waldburger</u>, 134 S. Ct. 2175, 2185 (2014) (holding that it is "error" to substitute "the proposition that remedial statutes should be interpreted in a liberal manner" for textual interpretation because "almost every statute might be described as remedial in the sense that all statutes are designed to remedy some problem.")

leeway to define their own periods of default, according to their respective circumstances and business interests." Alibrandi, 333 F.3d at 87 & n.5. Moreover, "the classification of debt collector depends upon the status of a debt, rather than the type of collection activities used." Alibrandi, 333 F.3d at 86; see also Dumont v. Litton Loan Servicing, LP, No. 12-cv-2677(ER), 2014 WL 815244, at *18 (S.D.N.Y. Mar. 3, 2014) ("[I]t is the actual status of the debt, and not the conduct of those seeking to collect, that determines whether a defendant falls within the FDCPA's definition of 'debt collectors.'").

ACM argues that although it told Panzer it was attempting to collect a debt, Panzer has not adequately alleged that the debt was in default when ACM acquired it. For example, ACM notes that "there is no statement that any amount is past due, no stated consequences for failure to pay, no late fees assessed or threatened and no other indicia that any party considered plaintiff to be in default of some obligation to pay for such damage." (Reply Mem. at 4–5.) Moreover, ACM argues that because it was involved with collecting the debt from the outset, it cannot be said that ACM "obtained" the debt when it was in default. See Montell v. Hassett, 870 F. Supp. 2d 395, 403 (D. Md. 2012) ("Because the management agent was involved in collecting the . . . fee . . . from the outset and was not assigned the collection action after Plaintiff went into default, the management agent and its employees cannot be considered 'debt collectors' subject to FDCPA liability.") Panzer argues that he has plausibly pled that the debt was in default for at least two reasons. First, ACM's email stated that the communication was being made in an attempt to collect a debt. Moreover, the rental contract with Sixt stated that "failure to pay all amounts due (including costs for damage to the property or equipment) are evidence of abandonment or refusal to redeliver the property punishable [as a misdemeanor under Florida law]."

Both sides rely on the Second Circuit's decision in Alibrandi.  There, First Union, an automobile lessor, hired North Shore to collect a debt owed under the lease.  North Shore informed the debtor that it was a debt collector, and its communications included FDCPA validation notices to that effect.  Collection efforts were subsequently transferred to Financial Outsourcing, a self-styled "service provider" (not debt collector), which sought payment from the debtor without including FDCPA notices.  In denying Financial Outsourcing's motion to dismiss FDCPA claims brought by the debtor, the Second Circuit held that the debtor had sufficiently pled that the debt was "in default" when Financial Outsourcing acquired it because "First Union had already declared the debt to be in default when North Shore, on behalf of First Union, specifically informed [Plaintiff] that it, North Shore, was a 'debt collector.' . . . If First Union hired North Shore to pursue [the] debt, North Shore's self-identification as a debt collector constituted a declaration by First Union that [the] debt was in default."  Alibrandi, 333 F.3d at 87.

Alibrandi thus stands for the proposition that an entity's self-identification as a debt collector—like the initial communication from ACM to Panzer—is strongly indicative that a debt was in default.[4]  See Hooks v. Forman Holt Eliades & Ravin LLC, No. 11-cv-2767 (LAP), 2015 WL 5333513, at *12 (S.D.N.Y. Sept. 14, 2015) ("Although Alibrandi did not hold that the mere use of a 'debt collector' disclaimer automatically transforms a person into a debt collector

---

[4] ACM argues that entities should not be treated as debt collectors under the FDCPA simply because they include FDCPA validation notices out of an excess of caution.  But the Second Circuit recently rejected a similar argument.  See Hart v. FCI Lender Servs., Inc., 797 F.3d 219, 227 (2d Cir. 2015) ("While it may be unfortunate for debt collectors that the use of a defective notice helps give rise to an obligation to provide a proper notice, the solution is to improve the defective notice.")  Thus, although Hart interpreted a different provision of the FDCPA (the phrase "in connection with the collection" of a debt), Hart buttresses Panzer's argument that an entity's self-identification as a debt-collector is relevant to determining whether that entity is a debt collector.  Hart's parenthetical summary of Alibrandi is also in accord.  See Hart, 797 F.3d at 227 (describing Alibrandi as "holding that lender's agent's self-identification as a debt collector in communication to borrower was relevant to whether lender considered the loan in default").

for purposes of the FDCPA, it does direct the court to consider the disclaimer in the totality of facts of each particular case.")  In this case, other facts also support Panzer's argument that the debt was in default when ACM obtained it.  For example, the Sixt contract could be read to indicate that default occurs when a damaged vehicle is returned.[5]  Additionally, Sixt's attempt to charge Panzer's credit card, and Panzer's subsequent refusal to pay, indicates that the debt may have been in default.  Accordingly, Panzer has plausibly pled that Sixt considered the debt to be in default before it hired ACM.

## II.   Alleged FDCPA Violations

Because Panzer pleads that the debt was in default when it was received by ACM, this Court turns to the substantive allegations regarding ACM's communications.  Under the FDCPA, "[u]nless set forth in the debt collector's 'initial communication' with the consumer, the debt collector must send the consumer a written 'validation notice' within five days of the initial communication.  The validation notice must contain:

> (1) the amount of the debt;

> (2) the name of the creditor to whom the debt is owed;

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

---

[5] See Am. Compl. Ex. B (noting that the vehicle must be returned "in the same condition that you received it" and "failure to return rented property . . . upon expiration of the rental period and failure to pay all amounts due (including costs for damages to the property or equipment) are evidence of abandonment or refusal to redeliver the property.")

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 134 (2d Cir. 2010) (citing 15 U.S.C.

§ 1692g(a)). "If the consumer disputes the debt or requests the name and address of the original creditor during the thirty-day 'validation period,' the debt collector must 'cease collection of the debt, or any disputed portion thereof' until the debt collector verifies the debt or obtains the name and address of the original creditor and 'a copy of such verification . . . or name and address of the original creditor, is mailed to the consumer by the debt collector.'" Ellis, 591 F.3d at 134–35 (quoting 15 U.S.C. § 1692g(b)). "However, the validation period is not a 'grace period'; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity." Ellis, 591 F.3d at 134–35 (citation and internal quotations omitted). "Validation period collection activities and communications must not 'overshadow' or 'contradict' the validation notice." Ellis, 591 F.3d at 135. Courts need to evaluate communications from the perspective of the least sophisticated (but nevertheless reasonable) consumer. See Ellis, 591 F.3d at 135.

Panzer's Amended Complaint identifies five alleged violations of the FDCPA in separate counts of the Amended Complaint. ACM argues that none of them qualify as FDCPA violations.

A. Count I

Panzer argues that ACM's unqualified statement that the debt "will be assumed to be valid" was misleading because the FDCPA requires validation notices to clarify that failure to contest the debt within 30 days means that the debt will be presumed valid by the debtor. Panzer's argument is strongly supported by the Second Circuit's recent decision in Hart:

> [B]ecause the Letter states that the debt will, after thirty days, be "assumed to be valid," a consumer who fails timely to act upon the Letter might believe that she has forfeited her right to challenge the accuracy of [the] debt assessment.  But under § 1692g(a)—[]paraphrased incompletely in the Letter—such an unchallenged debt may be assumed to be valid only by the debt collector, leaving the consumer free to contest the debt with the lender either directly or in the courts.  [M]isleading the consumer into believing she had forfeited her right to dispute the validity of her putative debt with the lender . . . would . . .  frustrate[] a major objective of the FDCPA.

Hart, 797 F.3d at 227.  Because ACM cannot sufficiently distinguish its notice from the one held to be deficient in Hart, ACM's motion to dismiss Count I is denied.

   B.  Count II

        The FDCPA prohibits "the false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer."  15 U.S.C. § 1692e(7).  Panzer alleges that ACM falsely implicated that Panzer may have committed a crime by sending him a copy of the Sixt Rental agreement, which states that "failure to pay all amounts due (including costs for damage to the property or equipment) [is] evidence of abandonment or refusal to redeliver the property punishable [as a misdemeanor under Florida law]."  However, Panzer cites no case law indicating that debt collectors violate the FDCPA by merely showing the consumer the contract they signed with the original creditor.  If anything, enclosing Panzer's contract with Sixt helped explain the nature of the alleged debt owed and cannot be construed as an implication that ACM was attempting to "disgrace" Panzer.  And while it does give this Court pause that the copy of the Sixt rental agreement sent to Panzer by ACM included a rectangle around the disputed language for emphasis, it seems clear that the purpose of that emphasis was to direct Panzer to the underlined language setting forth his purported duty to return the vehicle in the same condition in which he received it.  (See Am. Compl. Ex. B.)  Accordingly, Count II of Panzer's Amended Complaint is dismissed.

C.  Count III

The FDCPA prohibits "false representation[s] or deceptive means to collect or attempt to collect any debt or obtain information regarding a consumer."  15 U.S.C. § 1692e(10). Panzer alleges that ACM engaged in deceptive means to obtain information about him by requesting Panzer's "insurance information" when, in fact, ACM believed that Panzer—not his insurance company—owed the relevant debt.  But Panzer fails to plead how, exactly, ACM's request for his insurance information constitutes "false representations or deceptive means," especially in view of the fact that Panzer's contract with Sixt required Panzer "to provide auto liability, collision and comprehensive insurance covering . . . the Vehicle."  (Am. Compl. Ex. B ¶ 6.)  Accordingly, Count III of Panzer's Amended Complaint is dismissed.

D.  Count IV

After Panzer notified ACM that he was disputing the debt, ACM was required to verify the debt.  "[T]he Second Circuit has not spoken authoritatively on the issue of what constitutes 'verification of the debt' for purposes of complying with the FDCPA.'"  Ritter v. Cohen & Slamowitz, LLP, 118 F. Supp. 3d 497, 500 (E.D.N.Y. 2015).  However, courts have "interpreted 'verification' to require only that the debt collector obtain a written statement that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."  Ritter, 118 F. Supp. 3d at 500 (citing Stonehart v. Rosenthal, No. 01-cv-651 (SAS), 2001 WL 910771, at *6 (S.D.N.Y. Aug. 13, 2001)).

Panzer alleges that ACM failed to verify the debt after Panzer disputed it. Specifically, Panzer asserts that ACM did not communicate with Sixt in a meaningful way to verify whether Sixt believed Panzer was contractually responsible for the damage.  ACM

counters that it did verify matters with Sixt and was not required to do more.  While ACM may have met its obligations under the FDCPA, it would be inappropriate to decide this issue without permitting discovery.  Accordingly, ACM's motion to dismiss Count IV is denied.

       E.   Count V

       Panzer alleges that ACM's communications included false representations in violation of Section 1692e(2), including the representation that the car did not have a leak when it left Sixt.  ACM argues that its June 23 letter merely pointed out the applicable contractual terms upon which Sixt was relying, the factual basis for Sixt's claim, and the specific amounts that Sixt claimed were owed.  But the June 23 letter contains the unambiguous statement that "[t]he vehicle did not leave [Sixt] in this [damaged] condition" in a communication that was "made in an attempt to collect a debt."  Accepting Panzer's allegations as true, he has plausibly pled that such a statement was a false representation in connection with an attempt to collect a debt, and therefore a violation of § 1692e(2).  Accordingly, ACM's motion to dismiss Count V is denied.

CONCLUSION

       For the foregoing reasons, Alternative Claims Management, LLC's motion to dismiss is granted with respect to Counts II, III and IV of the Amended Complaint.  Its motion is otherwise denied.

       The Clerk of Court is directed to terminate the motion pending at ECF No. 20.

Dated: July 8, 2016
     New York, New York

                 SO ORDERED:

                 WILLIAM H. PAULEY III
                     U.S.D.J.